IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SUSAN G. DEPINA                                                                                    PLAINTIFF

v.                             CASE NO.        12-2192

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                        DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed her applications for DIB and SSI on January 20, 2006, alleging an onset date of December 5, 2005 (T. 239), due to plaintiff's back injury (T. 273).  A First Hearing was held on that application on September 24, 2007. By decision dated November 19, 2007, the ALJ found that the Plaintiff was not entitled to disability from the alleged onset date to the date of the decision. T. 94-109.  On July 21, 2008, the Appeals Council remanded the case back to an ALJ.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

T. 110. Plaintiff appeared at a Second Hearing on November 7, 2008. By decision dated April 6, 2009, the ALJ issued a Partially Favorable decision, finding the Plaintiff became disabled on December 24, 2008. T. 114-126.

By Order dated June, 2010, the Appeals Council remanded the matter to an ALJ with instructions. T. 128-131. A Third Hearing was held on October 26, 2010. ( T. 31-56). By decision dated February 16, 2011, the ALJ found that the Plaintiff was not entitled to disability from December 7, 2005 to December 24, 2008. The Appeals Council Issued a Notice of Appeals Council Action dated May 4, 2012. T.233-238. By decision date June 28, 2012, the Appeals Council issued a Notice of Decision Unfavorable. T. 1-9.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

A.  Residual Functional Capacity:

The AC, in its opinion dated June 29, 2012, found that the Plaintiff's impairments results in the following limitations on her ability to perform work-related activities:

> lift and/or carry at least ten pounds occasionally and at least ten pounds frequently; stand and/or walk for at least two hours total during an eight-hour workday; and sit for at least six hours total during an eight-hour workday. The claimant could occasionally stoop, crouch, crawl, kneel, balance, and climb stairs but she could never climb ladders (20 CFR 404. 1567(a) and 416.967(a)). T. 7

The AC found that the Plaintiff had the RFC to "perform a reduced range of the sedentary

exertional level". This RFC assessment is the same as determined by the ALJ on February 16, 2011. (T. 17).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

    1. Credibility

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002))

When the Plaintiff was asked why she had not been able to work since 2005 she testified that "I wish I could. But there's -- I would, I would lay in bed and just cry myself to sleep from the pain, because there's just no way I would be able. Toward the end of my work, toward the end

of December '06, '05, when I left, I was in so much pain I was crying myself to sleep. And it, it -- I have days like that. I have days like that when I, I can't bear the pain. I mean the pain is so -- it's incredible, it's incredible." (T. 50). The Plaintiff also testified that she had to miss many days at work because of the pain and that she had to take unscheduled breaks.

The AC stated that the Plaintiff's "subjective complaints are not fully credible for the reasons identified in the body of the decision." (T. 7). The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC (T. 19).

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006)

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781,

783 (8th Cir.2004).

      The court notes that the ALJ stated that his decision "only covers the period from the claimant's alleged onset date of December 7, 2005 to an onset date of December 24, 2008." (T. 13).  His decision makes no credibility determination for any period after December 24, 2008.  The AC seeks to judicial change the ALJ's decision to reflect a period from the onset date to the date of hearing but the ALJ was clear that his decision only covered the time frame from 2005 to 2008 and no judicial gymnastics can change that. The AC made no independent evaluation of the Plaintiff's credibility but relied solely on the determination by the ALJ.  Even if the court were to conclude that the ALJ properly considered the Plaintiff's credibility that determination, according to the ALJ's opinion of February 16, 2011,  was only for the time period of December 7, 2005 to December 24, 2008.  Since the AC made no separate analysis of the Plaintiff's credibility, the AC's decision that the Plaintiff's subjective complaints were not credible was not supported by the record.

      b.  RFC Assessment

      Dr. Prust, the Plaintiff's treating specialist in 2005, noted the Plaintiff's MRI showed Moderate stenosis at L4-5 and minimal stenosis at L5-S1. (T. 364) Dr. Prust treated the Plaintiff with a lumbar steroid epidural on November 11, 2005 (Id.) and again on December 16, 2005 (T.361) but the shots offered no relief. (T. 358).  Dr. Prust diagnosed the Plaintiff, inter alia, with Lumbar spinal stenosis, Lumbar radicular low back pain, Lumbar degenerative disk disease, and osteoarthritis. (T. 358).

      Dr. Epstein, the Plaintiff's treating physician, noted that the Plaintiff was unable to return to her previous job (T. 371) and the Postal service ultimately placed the Plaintiff on disability. (T.

42).

In October 2006 the Plaintiff began to be treated by Dr. Michael S. Cole, M.D. and in January 2007 Dr. Cole completed an Attending Physician's Statement finding that the Plaintiff would need unscheduled breaks at work and would probably miss more than four days of work per month. (T. 410). A treating physician's opinion "is entitled to substantial weight 'unless it is unsupported by medically acceptable clinical or diagnostic data.'" Perks, 687 F.3d at 1093-94 (quoting Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir. 1991)).

Dr. Cole ultimately referred Plaintiff to Dr. Russell B. Branum, M.D. a Rheumatologist who examined the Plaintiff on May 20, 2008. (T. 428). Dr. Branum found her ROM to be good but the "tender point exam for fibromyalgia diffusely moderately positive mid trapezius, medial scapulae, second costochondral space lateral elbows, greater trochanter, medial knees" and he did diagnose her with fibromyalgia. (T. 429). Dr. Branum diagnosed the Plaintiff with "Possible systemic arthritis" and Fibromyalgia in August 2008. (T. 427).

Fibromyalgia has long been recognized by the courts as an elusive diagnosis; its "cause or causes are unknown, there's no cure, and, of greatest importance to disability law, it's symptoms are entirely subjective." *Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir.2009). Symptoms of the disease include widespread pain, fatigue, disturbed sleep, and stiffness and tender spots in certain fixed locations of the body. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996); Stedman's Medical Dictionary, 725 (28th ed.2006) (noting that fibromyalgia's characteristics include "chronic widespread aching and stiffness, involving particularly the neck, shoulders, back, and hips, which is aggravated by the use of the affected muscles.")"Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th

Cir.1996).

Dr. Cole issued a second Attending Physician's Statement on August 26, 2008 stating that the Plaintiff would need unscheduled breaks, miss more than four days of work per month, and that she could not use her feet or hands for repetitive actions. (T. 418).

Dr. Branum issued an Attending Physician's Statement on September 15, 2008 stating that the Plaintiff would need unscheduled breaks, miss more than four days of work per month, and that she could not use her feet or hands for repetitive actions. (T. 438).  Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527

Dr. Cole ordered an additional MRI on the Plaintiff which was performed on May 12, 2010.  The MRI stated in part as follows:

> FINDINGS: There is straightening of the normal lumbar lordosis. There is disc desiccation at all levels with relative sparring at L2-3. Conus ends at Ll. Note is made of hemangioma in the IA vertebral body and L3 vertebral body. The remaining vertebral bodies are normal in height and signal
> Evaluation of the individual levels demonstrates:
>
> At Tll-12, a small central disc protrusion with effacement of ventral thecal sac resulting in mild cord deformity.
> At Tl2-Ll, there is a left paracentral disc extrusion, moderate, displacing the conus to the  right.
> At Ll-2, there is a mild minimal right paracentral broad disc protrusion.
> Al L2-3, then: is a mild broad diffuse disc bulge.
> At L34. there is a moderate diffuse disc bulge. facet arthropathy, and ligamentum flavum redundancy. There is moderate spinal stenosis. There is mild bilateral neuroforaminal  narrowing.
> At IA-5. there is a mild diffuse disc bulge with a superimposed srnallcentral disc protrusion and annular tear. There is mild left neuroforaminal narrowing and minimal right neuroforaminaI narrowing.
> At LS·S 1, there is a mild diffuse disc bulge with mild bilateral

      neuroforaminal narrowing.

Note is made of a right renal probable cyst.

IMPRESSION:

Multilevel degenerative disc disease and neuroforaminal narrowing as above,
There is a left paracentral moderate disc extrusion displacing the conus to the
right. Spinal stenosis as described above.

    The ALJ countered the opinions of Dr. Cole and Dr. Branum with the opinions of Dr. Robert Estes.  In May 2006 Dr. Estes provided a Physical RFC Assessment. He felt that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and that she could sit, and stand/or walk for six hours in and 8 hour workday. (T. 400).  Dr. Estes also felt that she had no Postural Limitation except on a ladder/rope/scaffold (T. 401) and had no Manpultive Limitations (T. 402).  Dr. Estes' opinion was reviewed and affirmed by Dr. Judy Marks-Snelling on September 26, 2006. (T. 407).

    It also appears that the Defendant obtained an opinion from another non-examining source, Dr. Barbara Felkins on November 17, 2010.  Dr. Felkins first provided a "Medical Interrogatory Physical Impairment–Adult".  The court cannot tell what evidence Dr. Felkins reviewed.  The court was not provided with any Request for Medical Advice Form showing what medical records were sent to Dr. Felkins.  Dr. Felkins states that she "reviewed 13 F files. I was not given any efiles, DLI".  (T. 473).  The court cannot tell what medical evidence Dr. Felkins reviewed but it seems clear that she was not provided with the MRI of May 12, 2010 (T. 465) or the MRI of 2005 (T. 398).  Dr. Felkins was of the opinion that the Plaintiff could lift 10 pounds frequently, 20 pounds occasionally (T. 476), that she could, at one time, sit for 4 hours and

stand/walk for 2, and that she could, in one day, sit for eight hours, and stand/walk for 6. (T. 477). Dr. Felkins opinion that the Plaintiff could sit for four hours at a time and stand and/or walk for two hours at a time is grossly divergent from the opinions of her treating physician and Rheumatoid specialist.

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id. *Cox v. Barnhart,* 345 F.3d 606, 610 (C.A.8 (Ark.),2003).

In this case there is a treating physician and a specialist who both have much more restrictive analysis of the Plaintiff's capacity to do work related activity than the non-examining consultive physicians. The court finds that the attempt of the ALJ to discredit the opinion of the Plaintiff treating physicians is not persuasive. The ALJ did not address the MRI performed on the Plaintiff on May 12, 2010 but made several reverences to an MRI performed in 2006. Apparently the ALJ did not consider this MRI because he restricted his opinion to a time period that did not contain that MRI.

The court feels remand is necessary to allow the ALJ to fully evaluate the time period from the date of alleged onset until the hearing date. The court further believes it is necessary to obtain a physical examination and PRFC Assessment by a consultive Rheumatologist.

### IV. Conclusion:

Accordingly, the court finds that the AC's decision is not supported by substantial

evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

     Dated this August 29, 2013.

                                                             /s/ J. Marschewski
                                                   HONORABLE JAMES R. MARSCHEWSKI
                                                   CHIEF U. S. MAGISTRATE JUDGE